# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **SHRETHA T. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:12-cv-00346** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment Upon the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment Upon the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff protectively filed her application for Supplemental Security Income ("SSI") on November 13, 2007,[2] alleging that she had been disabled since November 1, 2007, due to "right foot problems." *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 91, 145, 170. Plaintiff's application was denied both initially (TR 91) and upon reconsideration (TR 93). Plaintiff subsequently requested (TR 119) and received (TR 120) a hearing. Plaintiff's hearing was conducted on April 5, 2010, by Administrative Law Judge ("ALJ") Daniel Whitney.  TR 28. Plaintiff and Vocational Expert, Rebecca Williams, appeared and testified. *Id.*

On May 19, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 105.  Specifically, the ALJ made the following findings of fact:

1.  The claimant has not engaged in substantial gainful activity since November 13, 2007, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairment: foot pain (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[2] Plaintiff's application for SSI was filed on December 14, 2007. TR 145.

4.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) that is limited to lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently; standing, walking, and/or sitting six hours in an eight-hour workday; frequently balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs; and occasionally climbing ladders/ropes/scaffolds.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on October 5, 1974 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has limited education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.      The claimant has not been under a disability, as defined in the Social Security Act, since November 13, 2007, the date the application was filed (20 CFR 416.920(g)).

TR 100-05.

On August 2, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 26. On March 8, 2012, the Appeals Council issued a letter declining to review the case (TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different

conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed to: 1) give appropriate weight to the opinion of her treating podiatrist, Dr. Keith W. Osorio, and 2) adequately evaluate her credibility. Docket No. 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1.  Weight Accorded to the Opinion of Plaintiff's Treating Podiatrist**

Plaintiff maintains that the ALJ "dismissed"  the opinion of Plaintiff's treating podiatrist, Dr. Keith W. Osorio. Docket No. 13 at 6. In support of her argument, Plaintiff cites Dr. Osorio's opinion that Plaintiff had a severe foot deformation that would never be resolved through further surgical intervention and that Plaintiff would be unable to hold a job that requires ambulation or standing for extended periods of time or at all. *Id.* at 3; *citing* TR 231, 235. Plaintiff argues that the ALJ inappropriately accorded greater weight to the opinion of the consulting examiner, Dr. Michael Ryan, than to the opinion of Dr. Osorio, without explaining his reasons for discounting Dr. Osorio's opinion and without justification for according greater weight to Dr. Ryan's opinion. Docket No. 13 at 7; TR 236-43.  Plaintiff contends that "since no reasons of any kind were given for discounting Dr. Osorio's opinions," the ALJ's decision cannot be supported by substantial evidence and, accordingly, must be reversed or remanded.  Docket No. 13 at 8.

Defendant responds that the ALJ properly considered and weighed the medical evidence of record. Docket No. 18 at 8-13. Defendant argues, as an initial matter, that Dr. Osorio did not give one opinion, but rather, three opinions, despite having treated Plaintiff *before* the relevant

8

period. *Id.* at 9. Defendant contends that Dr. Osorio's opinions were incongruent with each other, and based on no evidence during the relevant period. *Id.* Defendant maintains that, accordingly, there were no records during the relevant period from Dr. Osorio for the ALJ to discuss. *Id.* Defendant notes that Plaintiff bears the burden of establishing disability through step four of the sequential evaluation; that Plaintiff failed to meet that burden; and that "[l]acking evidence from plaintiff, the ALJ decided her claim based on the information available in her case." *Id.* at 10. Defendant argues that the medical opinions of record support the ALJ's determination that Plaintiff retained a RFC to perform medium work. *Id.* Defendant notes that Dr. Osorio's opinions were not only incongruent with each other, but also with the medical assessment from Dr. Christian Vissers, the consultative examination report from Dr. Mark Bennett, and the Physical RFC Assessment from Dr. Michael Ryan. *Id.*; *citing* TR 227-31, 232-34, 235, 236-43, 244-50. Defendant asserts that, given the disparity between sources, the ALJ properly discounted the opinions of Dr. Osorio, and appropriately accorded greater weight to the opinion of Dr. Ryan. Docket No. 18 at 12-13.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources

are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

      (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

      (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

      (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

      ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

      The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[4] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d

---

[4] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. §404.1502.

Dr. Osorio is Plaintiff's treating podiatrist, having treated her in 2007 and having performed her bunionectomy in September of that year. TR 102-03, 216-26. As a treating physician, Dr. Osorio's opinions would normally be accorded greater weight than other opinions, as long as Dr. Osorio's opinions were supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. 20 C.F.R.§ 416.927(d). The ALJ in the case at bar, however, found Dr. Osorio's opinions unpersuasive because Dr. Osorio

provided divergent opinions about Plaintiff's condition during a time in which Plaintiff was no longer in his care. TR 103, 227-30, 231, 235.

Recounting Dr. Osorio's treatment of Plaintiff and subsequent opinions, the ALJ stated:

> In September 2007, the claimant was diagnosed with hallucis abductor valgus with metatarsal primus valgus right foot; elongated third metatarsal right foot; and hammertoe fifth digit right foot. She underwent a radical bunionectomy with first metatarsal osteotomy with K-wire fixation; third metatarsal osteotomy; and hammertoe repair fifth digit. Exhibit 2F.
>
> . . .
>
> Other opinion evidence consists of a Medical Source Statement completed in February 2008 by the claimant's podiatrist Keith W. Osorio, D.P.M., who reported that the claimant could occasionally balance, kneel, crawl, and stoop but should avoid climbing and crouching. He did not complete the remainder of the form stating that his practice is limited to podiatry. However, an unsigned letter from Dr. Osorio states that the claimant is afflicted with several congenital foot deformities such as severe rigid pes planovalgus and metatarsal adductus which cause significant discomfort with prolonged standing or ambulation. He further stated, "The pain in the foot, knee, hip or lower back related and can be chronic in nature [*sic*]. Ms. Brown has severe pain in both feet during any weight-bearing activity, she had surgery several months ago to relieve some of her symptoms [*sic*]. However her foot pain is never going to be resolved through surgical intervention." He opined that the claimant will be unable to work in any job requiring ambulation or standing for extended periods. Exhibit 3F. In September 2008, Dr. Osorio submitted a second letter which stated that the claimant's surgery was successful in correcting the major deformities; however, she continues to suffer from multiple foot deformities which make it impossible for her to hold any employment which requires standing or walking. He further stated that these problems are permanent and would not be resolved by further surgical interventions. Exhibit 5F.

TR 102-03, *citing* TR 216-26, 227-30, 231, 235 (bracketed material in original).

When determining the weight to be accorded to the opinion evidence, the ALJ also

considered the opinions of Dr. Vissers, Dr. Bennett, and Dr. Ryan, all of which were inconsistent

with the opinions expressed by Dr. Osorio, recounted above. TR 102-04, *referencing* TR 227-30,

231, 232-34, 235, 236-43, 244-50.  The ALJ discussed each medical opinion in turn. TR 102-04.

In April 2010, subsequent to the hearing, Dr. Vissers, an orthopaedic surgeon, examined

Plaintiff in order to complete a Medical Source Statement on her behalf. TR 244-50. Recounting

Dr. Vissers' assessment, the ALJ stated:

> Subsequent to the hearing, the claimant was evaluated by
> orthopaedic surgeon Christian Vissers, M.D., for pain in her right
> foot with ambulation, and it was noted that she was applying for
> disability.  Upon examination, her first metatarsopalangeal joint
> demonstrated 15 [degrees] of dorsiflexion and twenty [degrees] of
> plantar flexion; significant pes planus; significant weakness with
> extensor hallucis and digitorum longus; tibialis anterior intact;
> decreased sensation on the dorsum of the foot with no other
> sensory deficits noted.  Diagnostic tests demonstrated previous
> bunion surgery with some retained hardware in the distal aspect of
> the metatarsal.  The medical assessment was status post right
> hallux valgux corrective surgery; decreased sensation dorsum right
> foot; and pes planus deformity right foot.

TR 102.  The ALJ continued:

> It was noted that the claimant was not interested in any additional
> treatment at this time and was to return to the clinic on an as
> needed basis. She requested completion of a Medical Source
> Statement. Dr. Vissers reported that the claimant can lift up to one
> hundred pounds occasionally and frequently carry up to fifty
> pounds; sit and/or stand for eight hours; and does not need a cane
> to ambulate. She can continuously operate bilateral foot controls;
> frequently stoop, kneel, crawl, and climb stairs/ramps;
> occasionally balance and crouch; never climb
> ladders/ropes/scaffolds; can perform activities like shopping,
> traveling without a companion, walking a block at a reasonable
> pace on rough or uneven surfaces, use public transportation,

prepare simple meals, care for personal hygiene, and sort/handle
paper or files. Exhibit 7F.

TR 102-03, *citing* TR 244-50.

Recounting Dr. Bennett's consultative opinion, dated May 16, 2008, the ALJ stated:

> A consultative examination was performed in May 2008 by Mark
> Bennett, M.D., wherein the claimant reported that she had bunion
> surgery on her right foot, but experienced sharp pain in the foot
> that "can jump to her other foot." She said that she has no pain
> while standing at first but that it comes on with time. She reported
> taking non-steroidal anti-inflammatory drugs and a Medrol Dose
> Pack. During the examination, it was noted that she had no limp
> but walked with a shifting cock-toe walk. She was observed to
> have no difficulty getting out of a chair or onto an examination
> table, and she used no assistive devices to aid in walking. . . She
> had normal ranges of motion in her knees and ankles, and the right
> foot had good sensation with well-healed scars. Due to the brevity
> and scope of the evaluation, Dr. Bennett was unable to make a
> determination about the claimant's ability to perform work-related
> tasks. Exhibit 4F.

TR 103, *citing* TR 232-34.

The ALJ also considered the September 10, 2008 opinion of Dr. Ryan, in which Dr. Ryan

opined that Plaintiff retained the residual functional capacity to perform medium level work. TR

102.[5]  Discussing Dr. Ryan's assessment, the ALJ noted:

> A Physical Residual Functional Capacity Assessment was
> performed in September 2008 by State agency medical consultant
> Michael N. Ryan, M.D., who reviewed the evidence and reported
> that the claimant could lift and/or carry fifty pounds occasionally
> and twenty-five pounds frequently; stand, walk and/or sit six hours
> in an eight-hour workday; frequently balance, stoop, kneel, crouch,
> crawl, and climb ramps/stairs; and occasionally climb
> ladders/ropes/scaffolds. He noted that the claimant reported pain

---

[5]An ALJ may consider the opinion of a non-examining physician designated by the Secretary in
determining whether a claimant has medically determinable impairments. *Reynolds v. Secretary*,
707 F.2d 927, 930 (6th Cir. 1983).

14

when putting on shoes and walking a lot; however she has a
walking boot but reported that she does not use it much. Exhibit
6F.

TR 103, *citing* TR 236-43.

As the Regulations state, the ALJ is not required to give controlling weight to a treating

physician's evaluation when that evaluation is inconsistent with other substantial evidence in the

record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is

contradictory evidence, the treating physician's opinion is weighed against the contradictory

evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other,

the final decision regarding the weight to be given to the differing opinions lies with the

Commissioner. 20 C.F.R. § 416.927(e)(2).

After evaluating the opinion evidence discussed above, the ALJ explained:

The opinion evidence has been considered as required by 20 CFR
416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p, and State
Agency medical consultant Dr. Ryan's opinion is most consistent
with the evidence of record. All other medical opinions are
credited only to the extent they are reflected in the residual
functional capacity. The evidence of record documents that the
claimant was not evaluated for foot pain or any other medical
condition between October 2007 and March 2010. Furthermore,
she admitted to not taking any medication for the past two years
although she has health insurance. Subsequent to the hearing, it
noted [*sic*] that the claimant was not interested in any further
medical treatment for her feet other than obtaining a disability
opinion.

TR 104.

The ALJ considered the conflicting opinion evidence, discussed above, and the other

objective and testimonial evidence of record, discussed below, and ultimately determined that

15

Dr. Ryan's opinion was most consistent with the evidence of record. This is within the ALJ's province. As has been noted, when there are conflicting opinions in the record, the final decision regarding the weight to be accorded to the opinions lies with the ALJ. Because there were conflicting opinions in the case at bar, the Regulations do not mandate that the ALJ accord any of Dr. Osorio's opinions controlling weight. The ALJ properly considered the conflicting opinion evidence and, as can be seen in the quoted passage above, appropriately explained the reasons for his determination; the ALJ's decision not to accord great weight to the opinion of Dr. Osorio was proper; Plaintiff's argument fails.

## 2.  Subjective Complaints of Pain

Plaintiff contends that the ALJ did not appropriately address her subjective complaints of "significant pain and very limited activities" when finding her subjective claims only partially credible. Docket No. 13 at 8-11. Specifically, Plaintiff argues that, rather than state his reasons for crediting or rejecting her subjective complaints, the ALJ "tosse[d] out boilerplate" and failed to adequately discuss why Plaintiff's statements made at the hearing about her limited mobility were not fully credible. *Id.* at 10. Plaintiff additionally notes that conflicting statements made in forms to which the ALJ refers as a basis for discounting her credibility were possibly completed by Plaintiff's attorney, not Plaintiff herself, and thus should not be used against her. *Id.* at 9. Plaintiff contends that it was erroneous for the ALJ not to ask Plaintiff about the discrepancies he believed existed and not to give Plaintiff the opportunity to address this concern. *Id.*

Defendant responds that the ALJ properly found Plaintiff's subjective complaints only partially credible. Docket No. 18 at 13. Defendant notes that "the ALJ found most record evidence supported a conclusion that plaintiff's claims of intense, persistent, and limiting foot

pain were only credible to the extent that the symptoms would not prevent doing a range of medium work." *Id.*; *citing* TR 101-02, 104. Defendant argues that the ALJ appropriately considered Plaintiff's inconsistent statements and contradictory daily activities. *Id.* Defendant also argues that the fact that Plaintiff's attorney may have completed one of the reports does not undermine the ALJ's decision because: (1) Plaintiff hired legal counsel to represent her regarding her claim, (2) her counsel would be an officer of the court with the duties of candor and zealous client representation, and (3) the ALJ notified Plaintiff and her counsel at the hearing that he would decide Plaintiff's claim based upon a review of the record and her hearing testimony, and specifically asked Plaintiff's counsel if there was any objection to the record but Plaintiff's counsel had none. Docket No. 18 at 13-14.  Finally, Defendant notes that Plaintiff bears the burden of proving her disability at steps one through four of the sequential evaluation. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's subjective complaints of pain expressed at the hearing were not fully credible because they were inconsistent with other statements made by Plaintiff and with medical evidence in the record. TR 102. In making this determination, the ALJ noted that he had:

>            considered the claimant's allegations at the hearing regarding
>            disabling symptoms, including pain and substantial limitations in

her ability to carry out activities of daily living.  I have not discounted such allegations solely on the basis of the absence or minimal nature of the objective medical record.  Rather, I have afforded full consideration to all of the evidence presented relating to subjective complaints, including, as appropriate and applicable herein, the claimant's prior work record and observations by third parties and treating and examining physicians relating, as appropriate, to such matters as: the claimant's daily activities; the duration, frequency, and intensity of any pain and other symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects, if any, from medications; functional restrictions; treatment, other than medication, that is received for pain or other symptoms; and any measures other than treatment that are used to relieve pain or other symptoms (20 CFR 404.1529 and SSR 96-7p).

TR 101.

When explaining his rationale for discounting Plaintiff's credibility, the ALJ articulated that Plaintiff's testimony at the hearing was incongruous with her statements in the Pain Questionnaire, dated August 5, 2008, and in the Disability Report, dated December 4, 2008, as well as with her medical history and objective evidence relating thereto, including the opinion evidence discussed above. TR 102, *referencing* TR 36-49, 194-97, 201-09.  Specifically, the ALJ stated:

At the hearing, the claimant also reported shortness of breath but admitted to smoking four to five packs of cigarettes per day. Additionally, she stated that she had received no medical treatment for this condition. . . .

. . .

At the hearing, the claimant alleged disability due to bilateral foot pain resulting from previous surgery and arthritis.  She reported that she is unable to stand for more than five minutes and then she must elevate her feet for thirty minutes to one hour.  However, her

medical history is not necessarily consistent with her allegations of disability. . . .

. . .

At the hearing, the claimant reported that she lives with her five year old son and his father. She reported that she does not grocery shop or do anything all day long expect sleep and watch television. However, she then reported that she gets her son up and ready for school. In the Pain Questionnaire, the claimant reported that she "walks around every day of the week to find jobs and fill out applications for jobs [*sic*]." She also reported that she walks to and from the bus stop to attend her appointments, apply for employment, grocery shop, run errands, and take care of other personal needs. In a Disability Report, she stated that she walks her son to school; however, at the hearing, she stated that her brother takes him to school every day. She reported that she has a walking boot, but "I don't use it that much just every so often." She also stated that she does not take medication because she ran out of her prescription two years ago. Exhibit 7E, 9E.

TR 100-04, *referencing* TR 36-49, 194-97, 201-09 ([*sic*] in original).

As can be seen in the quoted passages here and above, the ALJ's decision specifically addresses not only Plaintiff's testimony and her subjective complaints, but also the medical, opinion, and administrative evidence of record, indicating that these items were considered. TR 102-04. Although Plaintiff contends that her hearing testimony should be deemed more credible than other evidence, including the documents that she contends were completed by her attorney, Plaintiff cites no authority to support her contention. *Id.* An ALJ is charged with considering the record as a whole, reaching a reasoned decision that is supported by substantial evidence, and articulating the rationale for that decision; the ALJ in the case at bar did so. It is clear from the ALJ's articulated rationale that the ALJ chose to rely on evidence that disputed Plaintiff's subjective complaints. *Id.* This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After considering the objective, testimonial, and administrative evidence of record, and observing Plaintiff at her hearing, the ALJ in the case at bar ultimately determined:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> . . .
>
> The claimant's subjective complaints have been accepted, as far as they were supported by the objective evidence and the record as a

> whole. Her impairment is limiting; however, not disabling. The
> record simply does not support the claimant's allegations of
> disability.

TR 104.

As explained by the ALJ, although Plaintiff claimed very limited functioning at the

hearing, the record demonstrates, *inter alia*, that she has also reported moderate levels of

mobility and activity, that she has not taken medication for her pain in the past two years, that

she is not interested in receiving further medical treatment, and that she rarely wears her walking

boot. TR 36-49, 102, 194-97, 201-09.

The ALJ observed Plaintiff during her hearing, assessed the medical records, reached a

reasoned decision, and articulated the rationale for that decision; the ALJ's findings are

supported by substantial evidence, and the decision not to accord full credibility to Plaintiff's

allegations made at the hearing was proper. Therefore, this claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for

Judgment Upon the Administrative Record be DENIED, and that the decision of the

Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge